United States District Court

For the Northern District of California

1
2
3
4
5           UNITED STATES DISTRICT COURT

6          NORTHERN DISTRICT OF CALIFORNIA

7

8   MENLO LOGISTICS, INC.,                    No. C-04-4684 JCS

9              Plaintiff,                      **ORDER DENYING WESTERN**
                                               **EXPRESS, INC.'S MOTION FOR NEW**
10       v.                                    **TRIAL AND GRANTING PLAINTIFF'S**
                                               **MOTION FOR PREJUDGMENT**
11   WESTERN EXPRESS, INC.,                    **INTEREST AND ATTORNEYS' FEES**
                                               **[Docket Nos. 123 and 126]**
12              Defendant.
    _____/

13

14   **I.      INTRODUCTION**

15          Following a jury trial, judgment was entered against Defendant Western Express, Inc.

16   ("Western Express") in the amount of $336,932.02 based on the jury's finding that Western Express

17   breached its contract with Plaintiff Menlo Logistics, Inc. ("Menlo").[1] Menlo now brings a Motion

18   for Prejudgment Interest and Attorneys' Fees ("the Attorneys' Fees Motion"), while Western Express

19   brings a Motion for New Trial ("the New Trial Motion"). For the reasons stated below, the New

20   Trial Motion is DENIED. The Attorneys' Fees Motion is GRANTED.

21   **II.     BACKGROUND**

22          **A.      The Underlying Events and Trial**

23          This case involves a dispute that arose when a shipment of goods that was being transported

24   by Western Express from one Hewlett Packard ("HP") facility to another, pursuant to a contract

25   between Western Express and Menlo, was stolen. The driver, Jerrick Douglas, arrived at his

26   destination after the scheduled delivery time on a Friday night. He was told he would have to wait

27   _____

28          [1] This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), based on the consent of the parties.

**United States District Court**

For the Northern District of California

until Monday morning to unload his truck.  Douglas went to a truck stop to wait, but on Sunday evening the truck was stolen when Douglas left the truck running while he went inside to make a telephone call.  Douglas told Menlo investigator Chris Zook that he had left the cab of the truck unlocked.  Subsequently, however, he stated in a declaration that he believed the truck had been locked.  HP filed a claim with Menlo for $336,932.02 for the lost goods, which Menlo paid.  Menlo, in turn, filed a claim for the same amount with Western Express.  Western Express disputed the claim and this action followed.

In its complaint, Menlo asserted two claims for breach of contract and one claim for negligence against Western Express.  The breach of contract claims were based on provisions of a 1999 Master Agreement between Menlo and Western Express and a 2002 Addendum to the Master Agreement.  First, Menlo asserted that Western Express was contractually obligated to pay for the loss because the goods were stolen prior to delivery at a time when Western Express was in control of the goods.  Second, Menlo asserted Western Express breached the contract because it did not maintain insurance that would have covered the losses that resulted from the theft of the goods, as required under the contract.

Menlo brought a summary judgment motion in which it asserted it was entitled to the damages sought in its complaint as a matter of law as to all three of its claims.  Western Express opposed the motion, asserting that with respect to the first breach of contract claim, the goods were not stolen prior to delivery because the goods were delivered when the driver arrived at the HP facility on Friday night.  Western Express also argued that it was not liable for the loss of the goods because under the contract, Western Express was not liable for losses that were due to Menlo or HP's "sole negligence."  As to the second breach of contract claim, Western Express argued that the insurance provision of the contract had been waived and in addition, that performance was impossible.  Western Express also challenged the authenticity of the 1999 Master Agreement.  Finally, Western Express argued there was a fact question as to the negligence claim.

The Court denied Menlo's summary judgment motion but narrowed the issues to be decided at trial by holding as a matter of law that: 1) the goods were not delivered as the term "delivery" was used in the contract; and 2) the insurance provision was not waived.  The Court found that the 1999

Master Agreement had been properly authenticated.  The Court also held that fact questions remained as to whether: 1) the "sole negligence" provision applied; 2) performance of the insurance provision was impossible; and 3) Western Express was negligent.  Prior to trial, Menlo voluntarily dismissed its negligence claim.

At the pretrial conference, the Court made a series of evidentiary rulings.  Among other things, the Court ruled that a witness included on Western Express's witness list – Steve Buzell – would not be permitted to testify because he was not timely disclosed as required under Rule 26 of the Federal Rules of Civil Procedure.  The Court also denied Western Express's motion in limine seeking exclusion of Chris Zook's report concerning the theft on the basis that it contained hearsay statements of the driver, Jerrick Douglas.  The Court found that the Zook report was admissible as a business record and as a party admission.

At trial, Western Express raised the possibility of introducing testimony by Douglas that around the time Chris Zook interviewed him for his report, he told a Western Express employee, Clarence Easterday, that he had locked the truck.  However, Western Express did not identify any applicable exception to the hearsay rule and did not formally seek to introduce the testimony.

After final jury instructions were given, the jury was given a special verdict form addressing liability and damages for each of the two breach of contract claims.  During deliberations, the jury asked whether the damages for the two claims would be "totaled cumulatively," or rather, whether the jury should award total damages as to each breach of contract claim.  The Court consulted with the parties and then answered the question by explaining that the damages for the two claims would not be totaled and that full damages should be entered as to each claim.  The jury found in favor of Menlo on both claims and found that damages for each claim were $336,932.02.

**B.    New Trial Motion**

Western Express asserts that it should be granted a new trial under Rule 59 of the Federal Rules of Civil Procedure on three grounds.  First, Western Express argues that the Court committed a series of legal errors, both at summary judgment and at trial.  In particular, Western Express takes the position that the Court erred when it: 1) admitted the 1999 Master Agreement into evidence without adequate authentication; 2) ruled on summary judgment that there was no delivery of the

**United States District Court**

For the Northern District of California

1  goods at issue, as a matter of law, rather than submitting the issue to the jury; 3) admitted the

2  investigative report of Menlo employee Chris Zook under the business record and admission against

3  interest exceptions to the hearsay rule; 3) refused to allow Steve Buzell to testify as either an expert

4  or percipient witness; 4) refused to allow driver Jerrick Douglas to testify that he told Western

5  Express employee Clarence Easterday that he locked his truck.

6         Second, Western Express asserts that it should be granted a new trial because the jury's

7  verdict as to its impossibility defense was against the clear weight of the evidence.

8         Third, Western Express argues that the verdict form was confusing, pointing to the jury's

9  question about damages as an indication that the jury did not understand that the two contract claims

10  represented alternative theories of liability.

11      **C.**    **Attorneys' Fees Motion**

12         Menlo seeks to recover attorneys' fees under the Master Agreement, which provides that "the

13  prevailing party shall be entitled to recover from the other party reasonable expenses, attorneys fees,

14  and costs."  Master Agreement, Paragraph 24.  In addition, Menlo seeks prejudgment interest

15  pursuant to California Civil Code § 3287(a), which provides that "[e]very person who is entitled to

16  recover damages certain, or capable of being made certain by calculation, and the right to recover is

17  vested in him upon a particular day, is entitled to recover interest thereon from that day."[2]

18         Western Express responds that Menlo should not be considered a prevailing party to the

19  extent that Western Express may prevail on its New Trial Motion.  Similarly, Western Express

20  asserts that damages are not "certain" for the purpose of awarding prejudgment interest because of

21  the issues raised in the New Trial Motion.  Western Express further argues that even if Menlo is

22  entitled to attorneys' fees, the fees sought are not reasonable.

23

24

25

26

27      [2]  In the Attorneys' Fees Motion, Menlo also requested $959.00 in costs.  It made the same request in its Bill of Costs.  On December 29, 2005, the Clerk's Office taxed costs in the amount of

28  $839.50.  Because Menlo has not challenged that determination, the Court need not address Menlo's request for costs, which is now moot.

**United States District Court**

For the Northern District of California

1    **III.    ANALYSIS**

2        **A.    New Trial Motion**

3            **1.    Legal Standard**

4        Rule 59 of the Federal Rules of Civil Procedure provides that "[a] new trial may be granted

5    to all or any of the parties and on all or part of the issues (1) in an action in which there has been a

6    trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at

7    law in the courts of the United States."  Courts have held that under Rule 59 a new trial may be

8    ordered "even though the verdict is supported by substantial evidence, if 'the verdict is contrary to

9    the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound

10   discretion of the trial court, a miscarriage of justice.'" *United States v. 4.0 Acres of Land*, 175 F.3d

11   1133, 1139 (9th Cir. 1999) (quoting *Oltz v. St. Peter's Cmty. Hosp.*, 861 F.2d 1440, 1452 (9th Cir.

12   1988)).  A new trial also should be granted under Rule 59 when an erroneous evidentiary ruling

13   "substantially prejudiced" a party.  *Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir.

14   1995).  Finally, a new trial may be warranted where it is evident from the jury verdict that the jury

15   was mistaken or confused about the applicable law.  *See Cheney v. Moler*, 285 F.2d 116, 117 (10th

16   Cir. 1960).

17           **2.    Verdict Against Weight of Evidence**

18       Western Express asserts that the verdict was against the clear weight of the evidence to the

19   extent the jury found that it was not impossible for Western Express to obtain the insurance required

20   under the contract.  The Court disagrees.

21       At trial, Western Express presented evidence that it was unable to procure insurance of the

22   kind required under the contract.  While the jury could reasonably have drawn an inference based on

23   this evidence that such insurance was impossible for *anyone* to obtain, its failure to draw that

24   inference also was reasonable.  Because Western Express presented no evidence of unavailability

25   beyond its own experience, the jury's finding was not against the clear weight of the evidence.

26           **3.    Evidentiary and other Legal Rulings**

27       As set forth above, Western Express challenges a number of rulings by the Court, including

28   rulings in its summary judgment order, at the pretrial conference, and at trial.  The Court stated the

**United States District Court**

For the Northern District of California

1  reasons for each one of these rulings, either on the record or in a written order.  Western Express has

2  not presented any arguments that persuade the Court these rulings were erroneous.  Therefore, none

3  of these alleged legal errors warrants a new trial.

4  **4.  Jury Confusion**

5  Western Express asserts that the jury's single question about damages on the two breach of

6  contract claims shows it was so confused about the verdict that a new trial should be ordered.  The

7  Court rejects this assertion.  The jury's question was a straightforward one, as was the answer that

8  was given in response, with the approval of both parties.  There were no further questions and

9  nothing in the jury's responses to the special verdict form suggest they were confused.

10  Therefore, the New Trial Motion is DENIED.

11  **B.  Attorneys' Fees Motion**

12  **1.  Prejudgment Interest**

13  A motion to alter a judgment to include prejudgment interest is governed by Rule 59(e) of the

14  Federal Rules of Civil Procedure.  *McCalla v. Royal Maccabbees Life Ins. Co.*, 369 F.3d 1128, 1128

15  (9th Cir. 2004).  Rule 59(e) provides that "[a]ny motion to alter or amend a judgment shall be filed

16  no later than 10 days after entry of the judgment."  In diversity actions, prejudgment interest is

17  governed by state law.  *AT&T v. United Computer Sys., Inc.*, 98 F.3d 1206, 1209 (9th Cir. 1996).

18  California law provides for both mandatory and discretionary prejudgment interest.  *See*

19  *McCalla*, 369 F.3d at 1128 (citing California Civil Code § 3287).  Mandatory prejudgment interest is

20  governed by subsection (a) of California Civil Code § 3287, which provides, in relevant part, as

21  follows:

22  > Every person who is entitled to recover damages certain, or capable of
   > being made certain by calculation, and the right to recover which is
23  > vested in him upon a particular day, is entitled also to recover interest
   > thereon from that day, except during such time as the debtor is
24  > prevented by law, or by the act of the creditor from paying the debt.

25  Cal. Civ. Code § 3287(a).  Discretionary prejudgment interest is governed by subsection (b), which

26  provides:

27  > Every person who is entitled under any judgment to receive damages
   > based upon a cause of action in contract where the claim was
28  > unliquidated, may also recover interest thereon from a date prior to the

6

**United States District Court**

For the Northern District of California

1  |  entry of judgment as the court may, in its discretion, fix, but in no
2  |  event earlier than the date the action was filed.

3  Cal. Civ. Code § 3687(b).  Mandatory prejudgment interest is awarded where the defendant, prior to

4  trial, actual knew the amount owed or could have computed the amount from "reasonably available

5  information." *Children's Hosp. and Med. Ctr. v. Belshe*, 97 Cal. App. 4th 740, 774 (2002).

6  Discretionary interest, on the other hand, may be awarded where the amount of damages "depends

7  upon a judicial determination based upon conflicting evidence and it is not ascertainable from

8  truthful data supplied by the claimant to his debtor." *Id*.

9       Here, Western Express knew the amount of the loss before this action was filed.  Prior to

10  filing the action (or even paying HP's claim), Menlo had presented Western Express with a claim for

11  $336,932.02 – the amount Menlo paid HP for the loss and the amount of Menlo's claim with

12  Western Express.  *See* Declaration of Joseph W. Schuler in Support of Plaintiff's Motion for

13  Summary Judgment or Summary Adjudication, Ex. 3 (HP Claim) (copy of check from Menlo to HP)

14  & Ex. 4 (Menlo claim).  Menlo also presented evidence in this action that its damages were incurred

15  on October 20, 2004, when it issued a check to HP for the lost shipment.  *Id.*, Ex. 5 (copy of check

16  from Menlo to HP).  This date, if not actually known to Western Express before this action was filed,

17  could easily have been ascertained.  The amount owed, therefore, was either known or could have

18  been calculated from reasonably available information.  As such, Menlo is entitled to a mandatory

19  award of interest.  Further, Western Express does not dispute that the applicable rate of prejudgment

20  interest is 10%, as set forth in Cal. Civ. Code § 3289.

21       The Court rejects Western Express's reliance on *United States Sec. and Exch. Comm'n v.*

22  *Henke*, 275 F. Supp 2d 1075, 1082 (N.D. Cal. 2003) in support of its assertion that prejudgment

23  interest should be denied based on considerations of fairness.  That case is inapposite because it

24  involves a discretionary award of prejudgment interest under federal law.

25       Accordingly, the Court awards Menlo $36,185.52 in prejudgment interest.[3]

26

27

28  [3] This amount is based on a rate of 10% per annum on damages of $336,932.02 – or, $92.31 per
day – for the period October 20, 2004, to the date judgment was entered, November 16, 2005.

**United States District Court**

For the Northern District of California

### 2.     Attorneys' Fees

In diversity cases, if "state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed." *Alyeska Pipeline Servs. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n. 31 (1975).  California law allows for the recovery of contractual attorneys' fees as follows:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce the contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

Cal. Civ. Code § 1717(a).  Western Express does not dispute that under the contract the prevailing party is entitled to attorneys' fees.  Further, having denied Western Express's New Trial Motion, the Court finds that Menlo is the prevailing party.  Therefore, Menlo is entitled to reasonable attorneys' fees.

Reasonable attorneys' fees are calculated using the lodestar approach, in which the court multiplies the number of hours billed by the party's attorneys by a reasonable hourly rate.  *See Jordan v. Multnomah County*, 815 F.2d 1258, 1264 n. 11 (9th Cir. 1987).  In calculating the lodestar amount, the Court considers any of the factors listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975), cert. denied 425 U.S. 951 (1976), that are relevant.[4]  To the extent that the *Kerr* factors are not addressed in the calculation of the lodestar, they may be considered in determining whether the fee award should be adjusted upward or downward, once the lodestar has been

---

[4] In *Kerr*, which was decided before the lodestar approach was adopted by the Supreme Court as the starting point for determining reasonable fees in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), the Ninth Circuit adopted the 12-factor test articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).  This analysis looked to the following factors for determining reasonable fees: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.  526 F.2d at 70.

**United States District Court**

For the Northern District of California

1   calculated. *Chalmers*, 796 F.2d at 1212. However, there is a strong presumption that the lodestar

2   figure represents a reasonable fee. *Jordan*, 815 F.2d at 1262.

3       "To inform and assist the court in the exercise of its discretion,'"[t]he fee applicant has the

4   burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the

5   requested rates are in line with those prevailing in the community for similar services of lawyers of

6   reasonably comparable skill and reputation.'" *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d

7   895, 908 (9th Cir. 1995) (quoting *Jordan*, 815 F.2d at 1263 (9th Cir.1987)). Generally, parties

8   seeking fees provide affidavits of practitioners from the same forum with similar experience to

9   establish the reasonableness of the hourly rate sought. *See, e.g., Mendenhall v. Nat'l Transp. Safety*

10  *Bd.*, 213 F.3d 464, 471 (9th Cir. 2000) (holding that affidavits of four practitioners in the community

11  were sufficient to establish reasonable rate of $250.00 per hour even though attorney had only billed

12  $150.00 per hour). Decisions by other courts regarding the reasonableness of the rate sought may

13  also provide evidence to support a finding of reasonableness. *See Widrig v. Apfel*, 140 F.3d 1207,

14  1210 (9th Cir. 1998) (holding that rate set by district court based, in part, on rate awarded to same

15  attorney in another case, was reasonable).

16      Menlo seeks attorneys' fees in the amount of $160,347.50. That amount includes fees

17  incurred by Menlo's current counsel, Folger, Levin & Kahn ("FLK") in the amount of $152,450.00

18  and fees incurred by its former counsel, Lanahan & Reilley, in the amount of $7,897.50. According

19  to Menlo, this amount does not include $90,000.00 in fees that were written off as an

20  accommodation to Menlo. *See* Declaration of Douglas W. Sullivan in Support of Menlo's Motion

21  for Attorneys' Fees ("Sullivan Decl."), ¶ 12. In addition, fees incurred in connection with

22  transferring the case from Lanahan & Reilley to FLK and fees incurred in amending the complaint to

23  drop the negligence claim were excluded. *Id.*, ¶ 13.

24      With respect to the fees billed by FLK, the vast majority arise from hours spent by lead

25  counsel Amy Kashiwabara, for whom Menlo seeks fees for a total of 427.10 hours at a rate of

26  $250.00/hour. *See id.*, ¶ 7. Additional fees were billed by two partners who supervised Ms.

27  Kashiwabara.'s work, Douglas Sullivan and J. Daniel Sharp. *Id.* Sullivan billed 22.10 hours at a

28  rate of $550.00/hour and Sharp billed 37.30 hours at a rate of $475.00/hour. Finally, fees are sought

9

**United States District Court**

For the Northern District of California

1   for time billed by legal assistant Vanessa Mendoza, who billed 90.30 hours at a rate of $175.00/hour.

2   Western Express challenges the fees sought by Menlo as unreasonable on several grounds.

3   First, it asserts that Menlo has failed to present adequate evidence that any of rates sought are

4   reasonable.  Further, Western Express asserts that the rates sought by Sullivan and Mendoza are *not*

5   reasonable.  Second, Western Express asserts that the time billed by Sharp for attending the trial was

6   unnecessary because Sharp did not actively participate except for a brief voir dire of the jury and

7   cross-examination of one witness.  Third, Western Express asserts that the time billed for its

8   summary judgment motion was excessive, given that Menlo ultimately lost the motion.  Finally,

9   Western Express argues that the $90,000.00 in fees that were not billed to Menlo should not be

10  considered as Menlo has provided no evidence as to how this time was spent.

11  Having carefully reviewed the time sheets provided by Menlo, the Court concludes that the

12  hours for which fees are sought by Menlo are reasonable.  First, the Court finds that the staffing of

13  the case was reasonable and likely reduced the fees incurred.  In particular, the bulk of the hours

14  were billed by the least expensive attorney at FLK, Kashiwabara, while the more senior (and more

15  expensive) attorneys exercised a much more limited role.  It was entirely reasonable for Sharp to

16  attend the trial in order to assist and advise Kashiwabara if necessary, and the Court declines to

17  second-guess that decision.  Similarly, it was reasonable for FLK's litigation assistant to attend the

18  trial.  The fact that Western Express only observed Mendoza hand a document or two to counsel is

19  not a sufficient basis to exclude these fees, given the importance of ensuring the trial ran smoothly,

20  with maximum efficiency as to the time of the jury, the Court and the parties.  The Court also rejects

21  the assertion that the time billed in connection with the summary judgment motion was

22  unreasonable.  A number of significant legal issues were resolved on summary judgment (many in

23  Menlo's favor), thereby reducing the issues to be addressed at trial.  Therefore, these hours were

24  reasonably incurred.

25  The Court further finds that the rates sought by Menlo are reasonable.  Menlo has provided a

26  declaration by a partner of FLK stating that the rates charged are normal (or reduced) hourly rates,

27  are within the range charged by comparable firms, and identifying specific cases in which other

28  courts have approved FLK's rates.  *See* Sullivan Decl., ¶ 10.  The Court also finds FLK's rates to be

reasonable in light of the fact that FLK wrote off over $90,000.00 in fees in the case. The fact that Menlo did not provide an itemization of those fees does not persuade the Court that this reduction is not relevant to its determination of the reasonableness of the rates sought. Finally, the Court notes that FLK significantly reduced the normal rate billed for Kashiwabara's time, from $310.00/hour to $250.00/hour. *Id.*, ¶ 4. Therefore, the Court concludes that the rates sought by Menlo are reasonable.

Accordingly, the Court awards the attorneys' fees in the amount of $160,347.50.

## IV.   CONCLUSION

For the reasons stated above, Western Express's New Trial Motion is DENIED. Menlo's Attorneys' Fees Motion is GRANTED. The judgment shall be amended to include an award of prejudgment interest in the amount of $36,185.52 and attorneys' fees in the amount of $160,347.50. Menlo shall prepare a proposed amended judgment consistent with this opinion to be lodged with the Court.

IT IS SO ORDERED.

Dated: February 21, 2006

JOSEPH C. SPERO
United States Magistrate Judge